[Crim. No. 544. Third Appellate District.—December 7, 1920.]

## In the Matter of the Application of RUBY HUNTER for a Writ of Habeas Corpus.

[1] JUVENILE COURT ACT — STATUS OF SALVATION ARMY INDUSTRIAL HOME.—The Boys' and Girls' Industrial Home maintained by the Salvation Army at Lytton Springs, Sonoma County, California, is not an institution such as is named in section 9 of the Juvenile Court Act under the designation "similar state institution."

[2] ID.—COMMITMENT OF WARD TO STATE INSTITUTION FOR FEEBLE-MINDED — DISCHARGE ON HABEAS CORPUS — EFFECT OF RELEASE — JURISDICTION TO MAKE FURTHER ORDERS.—Where a minor, after being adjudged a ward of the juvenile court of a given county until she shall "attain the age of twenty-one years, or until sooner discharged," and while she is in the custody of the authorities of a private industrial home in another county, with the knowledge

and consent of the judge of said juvenile court, is committed by the superior court of the latter county to a state institution for the feeble-minded, from which she is by that court ordered discharged on *habeas corpus* because the order of commitment was based upon a petition signed by a person not entitled to sign the same, which signing was in violation of the provisions of section 2192 of the Political Code, the effect of that order of discharge is to place said minor in the position she was in prior to her commitment to such state institution—a ward of the juvenile court of the former county, and she is subject to the further order of that court.

PROCEEDING on Habeas Corpus to secure the release of a minor committed to and detained in a county detention home. Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

King & King for Petitioner.

J. R. Robinson for Respondent.

ANDERSON, P. J., *pro tem.*—Ruby Hunter, the petitioner herein, was adjudged a ward of the juvenile court in and for the county of Butte, in the month of December, 1919, and by such order her status as such ward was fixed until she should attain the age of twenty-one years, or until sooner discharged by the court.

Thereafter, on February 7, 1920, the said court, exercising its jurisdiction over said ward, committed her to the Boys' and Girls' Industrial Home at Lytton Springs, in the county of Sonoma, state of California, said home being conducted by and under the management of the Salvation Army. A limit was likewise placed in said commitment, stating that said ward should remain in said Industrial Home until she should attain the age of twenty-one years, or until the further order of said juvenile court.

An attack was made against these proceedings on *habeas corpus,* but the proceedings were duly upheld by the appellate court for the third district on January 19, 1920 (*Application of Hunter for Writ of Habeas Corpus,* 45 Cal. App. 505, [188 Pac. 63]).

While said ward was in the custody of the authorities of said Industrial Home, a petition was signed and filed

by the superintendent of said Industrial Home, in the superior court in and for the county of Sonoma, alleging that the said ward had become and was weak and feeble-minded, and was a proper person to be committed to the Sonoma State Home, an institution conducted for the care and treatment of feeble-minded persons, and thereupon the Honorable Emmet Seawell, Judge of the said superior court in and for the county of Sonoma, made an order committing the said ward to the custody of the authorities of the said Sonoma State Home.

Thereafter, a petition for writ of *habeas corpus* being filed in the said superior court in and for the county of Sonoma by the said ward, Ruby Hunter, the said the Honorable Emmet Seawell, on the fourteenth day of September, 1920, granted the prayer of the petitioner and ordered her discharge from said Sonoma State Home, on the ground that the order committing the said Ruby Hunter to said Sonoma State Home was based upon a petition signed by a person not entitled to sign the same, which signing was in violation of the provisions of section 2192 of the Political Code of the state of California.

After the discharge was so granted, the said Ruby Hunter did not return and was not sent back to the said Industrial Home, and thereafter, to wit, on the sixteenth day of September, 1920, said juvenile court in and for the county of Butte made its order modifying the former order of commitment wherein the said ward was committed to said Industrial Home, and ordered that the said ward be committed to the Butte County Detention Home, and directed that a warrant be issued for her arrest for the purpose of carrying out said order, under which last-mentioned order and commitment the said ward and petitioner herein is now being detained in the Butte County Detention Home.

It is contended by petitioner that her discharge in the *habeas corpus* proceedings, involving the defective petition in the matter of the commitment to the Sonoma State Home, also involved the validity of the first commitment by the juvenile court in and for the county of Butte to the said Industrial Home, for the reason, it is claimed, that the said Industrial Home comes within the scope and

powers of institutions designated by the statute as "similar state institutions."

A further contention is made that, inasmuch as the said judge of the juvenile court in and for the county of Butte had "knowledge" of and "consented" to the petitioning by the "management" of said Industrial Home to the said superior court in and for the county of Sonoma for the commitment of the said Ruby Hunter to the Sonoma State Home, that this amounted in law to a discharge from said Industrial Home, and that such discharge "so sanctioned by said juvenile court is a bar in this proceeding."

The principal authority cited by petitioner in support of her contention is *In re Johnson,* 36 Cal. App. 319, [171 Pac. 1074]. The decision in this case is based upon the construction to be given to section 9 of the Juvenile Court Law (Stats. 1915, p. 1225), which is as follows:

"Any order made by the court in case of any person subject to the jurisdiction of the court under the provisions of any of subdivisions one to thirteen inclusive of section one of this act may at any time be changed, modified or set aside as to the judge may seem meet and proper; *provided, however,* that nothing in this act contained shall be deemed to interfere with the system of parole and discharge that is now or may hereafter be provided by law, or by rule of the board of trustees of the Whittier State School, the Preston School of Industry or the California School for Girls, or any similar state institution or institutions, respectively, for the parole and discharge of wards of the juvenile court committed to the said schools or to any similar state institutions hereafter created, or with the management of the said schools, save that the court committing a ward to any of said schools may thereafter change, modify or set aside said order of commitment upon ten days' notice of the hearing of the application therefor being served by United States mail upon the superintendent of the said school to which said person has previously been committed, and providing that the court shall not then change, modify or set aside said order without due consideration of the effect thereof upon the discipline and parole system of said school or institution."

An examination of this case will reveal the fact that the court was dealing with one of the exceptions enumerated

in the statute, and it did nothing more than to say, in effect, that the plain language of the statute should be followed by the courts. The case was one wherein the juvenile court tried to control the ward after the authorities at the Preston School of Industry had discharged him in accordance with their rules and regulations; but there is nothing in this decision, nor has any decision been called to our attention, wherein the appellate courts have intimated that the powers of the juvenile court should be curtailed in dealing with wards of the court, further than that they are limited by the express letter of the statute.

[1] Learned counsel for petitioner earnestly labor to show that the said Industrial Home conducted by the Salvation Army is an institution such as is named in section 9 of the Juvenile Court Law under the designation, "similar state institution," and upon this they contend that when the superintendent of said Industrial Home obtained the order committing said ward to said Sonoma State Home, that said act thereby operated to discharge said ward from said Industrial Home, and likewise from the order of the juvenile court. With this contention we cannot agree, for to so hold would require a violent construction, as it clearly appears to us that an institution conducted as is the said Industrial Home bears no resemblance to a state institution. Even if it could be shown—which it has not been—that the said Industrial Home had a system of rules and credits entitling an inmate to a discharge under certain conditions, certainly an order of discharge granted by such an institution would not be binding upon the juvenile court.

Petitioner cites the case of *Board of Directors of Woman's Relief Corps Home Assn. of California* v. *Nye*, 8 Cal. App. 527, [97 Pac. 208], as giving support to her contention that the said Industrial Home may be properly designated as "a similar state institution," but an examination of this case will clearly show that the state did have the management and control of the institution considered in said decision. The trustees were appointed by the Governor, accounts were compelled to be kept; in fact, all expenses for conducting said institution were subject to consideration and ratification by the state authorities.

[2] The fact that the judge of the juvenile court had knowledge or even was agreeable to the proceedings insti-

tuted by the superintendent of the said Industrial Home in the effort to confine the said ward in the Sonoma State Home could not oust the juvenile court of Butte County of jurisdiction of the ward, for it is nowhere contended that the said juvenile court, as such court, took any action in regard to the proceedings before the superior court in and for Sonoma County, and any consent to the proceedings manifested by the judge in sending telegrams, letters, etc., would amount to nothing more than the act of a private individual. It is not contended that the judge acted in his official capacity, but even if he had so acted, there seems to be nothing in the Juvenile Court Law inconsistent with such action, and, indeed, it would seem a duty incumbent upon the judge of the juvenile court, constituted as he is, the virtual guardian of the ward, to jealously guard, guide, and protect the ward under all changing conditions, for practically all the duties of a father devolve upon the court then; nor do we believe that after the order is made declaring a child to be a ward of the court, and after the child is committed to an institution or to a private individual for its care, education, support, maintenance, etc., the child should unfortunately become mentally weak, that it would be inconsistent with the court's duty to commit the child to the care of an individual who might restore it to mental health and vigor, or to a private institution for a like purpose, or be instrumental in starting the machinery of the law for the purpose of having a ward committed to a state institution. Could it be contended, then, that because the court was looking out for the child's mental welfare that it would lose its jurisdiction any more than it would if it were looking after the welfare of the child in any other way?

If after the law is invoked, through the instrumentality of the court or otherwise, and the ward is thus placed in a state institution for the benefit of its mental trouble, and after it is freed from such institution by reason of being cured, or for any other reason, may it be contended that by virtue of its incarceration and subsequent grant of freedom it has become absolved from the necessities of ordinary mortals for care, education, support, etc.? If so, upon a parity of reasoning, it may be contended that the natural father loses all control over his child after he has been

instrumental, or some other person has been instrumental, in having it committed to an institution for the feeble-minded, and the child upon a writ of *habeas corpus* obtains its freedom by reason of some defect in the commitment, or by reason of being cured. It is idle to so contend, for the necessity for caring for, controlling, and supporting the child still remains, and this subject matter must still be dealt with by the father or by the juvenile court.

When the superior court of Sonoma County acted, its action each time was in relation to a subject matter separate and apart from that upon which the juvenile court acted, and the restoration of liberty from an institution dealing with the subject matter of the child's mental welfare was not a restoration of liberty from every other tie or obligation resting on the child.

The most that can be said of the discharge by the superior court of Sonoma County is that the ward is left where the court found her. It did nothing more than to undo what it had previously done: It made an order committing the child to the Sonoma State Home, and in another proceeding it found that in so doing it had made a mistake; it then proceeded to undo this action, and, after this was done, the ward then stood where she did before—clothed with all former rights and subject to all former claims and obligations.

Counsel for petitioner seems to take the view that a restoration of liberty under a writ of *habeas corpus* is a granting of freedom for every purpose and against every claim. In the very nature of things, this could not be so. Taking the petitioner's case, for instance, let us assume that the petitioner after having been committed to the said Industrial Home had committed a felony in Sonoma County, and the authorities there had decided to prosecute her in that county; that she applied for and was granted her discharge on *habeas corpus* by reason of some deficiency in the proceedings; could it then properly be contended that she was discharged from the order of the juvenile court of Butte County? Or, to further illustrate, assuming that after the commission of a felony, as aforesaid, it was found that she was insane and that she was committed to the State Hospital for the Insane; that she was afterward discharged as cured, or discharged upon a writ of *habeas corpus* by reason of some defect in the proceedings committing her to said

state hospital; could it then properly be contended that she was discharged from the order of the juvenile court of Butte County? The result simply would be that the juvenile order would remain dormant and inactive during these periods, as it came in conflict with superior authority, and as soon as the superior authority was removed the juvenile order would begin to function. And so it is in the case at bar; the order of the juvenile court is now in full force and effect, and must be respected.

The writ is discharged and the petitioner remanded.

Hart, J., and Burnett, J., concurred.